IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-20856
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

JAVIER CEBALLOS-TORRES,

                                        Defendant-Appellant.
_____

        Appeal from the United States District Court for the
                    Southern District of Texas

_____
                       July 6, 2000
Before REYNALDO G. GARZA, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     After a bench trial, Javier Ceballos-Torres was found guilty
of possession with intent to distribute cocaine, 21 U.S.C. § 841,
and knowing possession of a firearm in furtherance of a drug
trafficking offense, 18 U.S.C. § 924(c)(1)(A)(i).  Ceballos now
appeals the latter conviction, asserting that the evidence was
insufficient to convict him of that offense.  He argues that "in
furtherance" requires more than the mere presence of the firearm in
an area where drug trafficking occurs.  We consider the plain
language and the legislative history and conclude that a possession
is "in furtherance" of the drug trafficking offense when it

furthers, advances, or helps forward that offense.  For the reasons stated herein, we affirm his conviction.

I

Ceballos is an illegal alien who has been removed from the country once before.  The High Intensity Drug Trafficking Area Task Force was investigating his involvement in a narcotics trafficking and money laundering operation.  Ceballos was eventually indicted for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 and for knowing possession of a firearm in furtherance of that crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Before trial, Ceballos moved to suppress evidence obtained during a search of his apartment.  The court denied his motion after a suppression hearing, and then tried Ceballos on evidence submitted during that hearing.[1]

The evidence presented during the hearing established the following chain of events that led to Ceballos's indictment and conviction.[2]  In February 1999, INS Special Investigator Ed Sanchez and IRS Special Agents Tom Mahoney and Mark Hughes went to Ceballos's home to conduct an immigration check.  The men knocked on the door, and Ceballos invited them inside.  He told them that

---

[1]Ceballos waived his right to a jury trial.

[2]The prosecutors also introduced extensive evidence concerning Ceballos's drug operation, but none of this is relevant to the issue before us on appeal.

2

he was lawfully in the United States and had documents relating to his immigration status in his bedroom closet. He then went to get them.

Sanchez followed Ceballos into the bedroom and noticed a 9mm Glock handgun lying in plain view on top of the bed. Ceballos said that he owned the gun for personal protection. The agents took possession of the gun and found that it was loaded. After inspecting Ceballos's immigration papers, the agents determined that Ceballos was in the country illegally, and they arrested him.

The agents later obtained a warrant to search the apartment. During that search, they discovered 569.8 grams of cocaine and several empty kilo wrappers in the hidden compartment of a closet. They also found $1,360 in cash in the pocket of a leather jacket hanging in the bedroom closet. This money later tested positive for cocaine. The agents also came upon an electronic gram scale and four modified straws for sniffing narcotics in the kitchen.

After trial, the court sentenced Ceballos to 130 months of imprisonment and four years of supervised release. Ceballos timely appealed on a single issue: whether prosecutors had presented sufficient evidence to convict him of possession of a firearm in furtherance of his drug trafficking offense.

II

A

We review a district court's finding of guilt after a bench trial to determine whether it is supported by "any substantial evidence." United States v. Rosas-Fuentes, 970 F.2d 1379, 1381 (5th Cir. 1992). Evidence is sufficient to support a conviction if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). In conducting this inquiry, we examine the evidence as a whole and construe it in the light most favorable to the prosecution. United States v. Lombardi, 138 F.3d 559, 560-61 (5th Cir. 1998).[3]

B

The central question before us is what it means to "possess a firearm in furtherance" of a drug trafficking crime. The relevant portion of the statute reads:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the

---

[3]We use this standard, rather than the plain error standard, even though Ceballos did not move for acquittal at the end of trial. This was a bench trial, and the not guilty plea therefore served as a motion for acquittal. Rosas-Fuentes, 970 F.2d at 1381.

4

United States, uses or carries a firearm, or who, <u>in furtherance of any such crime, possesses a firearm, shall</u>, in addition to the punishment provided for such crime of violence or drug trafficking crime, [<u>be sentenced to an additional term of years</u>].

18 U.S.C. § 924(c)(1)(A) (emphasis added).

In <u>Bailey v. United States</u>, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court was faced with an earlier version of this statute that prohibited "us[ing] or carr[ying] a firearm during and in relation to" drug trafficking. The statute, unlike the statutory language here, did not explicitly criminalize possession. The Court was asked to determine the meaning of the word "use" in that context.

The Court began its inquiry by turning to the dictionary, which provided several definitions of "use." <u>Id.</u> at 145, 116 S.Ct. at 506. Next, the Court considered the canon of statutory construction that warns against superfluousness: "'Judges should hesitate ... to treat [as surplusage] statutory terms in any setting, and resistance should be heightened when the words describe an element of a criminal offense.'" <u>Id.</u> at 145, 116 S.Ct. at 506-07 (quoting <u>Ratzlaf v. United States</u>, 510 U.S. 135, 140-41, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994)). Thus, the Court sought a definition of "use" that would not also encompass "carry," thereby rendering "carry" superfluous. <u>Bailey</u> 516 U.S. at 145, 116 S.Ct. at 507. Then the Court looked at other uses of the word

5

"use" in § 924 to ensure that its interpretation would be harmonious with them. Id. at 146, 116 S.Ct. at 507. Apparently still lacking certainty, the Court reviewed various amendments to § 924 over time for an indication of the intended meaning of "use." Id. at 147, 116 S.Ct. at 507-08. The Court concluded that Congress' choice of the word "use" implied some "active employment" of the firearm, not its mere presence at the scene or possession. Id. at 148, 116 S.Ct. at 508.

We will follow the same route as the Bailey Court in interpreting "in furtherance." The dictionary defines "furtherance" as "[t]he act of furthering, advancing, or helping forward." Webster's II New College Dictionary 454 (1st ed. 1995); The American Heritage Dictionary of the English Language, 534 (10th ed. 1981). When would a gun further, advance, or help a drug trafficking? Five ways spring quickly to mind. First, an accessible gun provides defense against anyone who may attempt to rob the trafficker of his drugs or drug profits. Second, possessing a gun, and letting everyone know that you are armed, lessens the chances that a robbery will even be attempted. Third, having a gun accessible during a transaction provides protection in case a drug deal in the apartment turns sour. Fourth, the visible presence of a gun during the transaction may prevent the deal from turning sour in the first place. Fifth, having a gun may allow the

6

drug trafficker to defend "turf," areas of the street from which lower level dealers operate for the trafficker. There may be other ways. But, in any event, the dictionary definition of "furtherance" clearly has relevant meaning in the context of this statute.

We next turn to the canons of construction to ensure that the dictionary definition fits within the statute's overall context. One canon of construction does raise a possible concern with the use of this definition--the same canon against superfluousness that the Bailey Court used. Here, we examine the whole of the statute to determine whether the dictionary meaning of "furtherance" creates a redundancy, either itself or with respect to other statutory provisions.

The first question is whether this definition of "in furtherance" renders § 924(c)(1)(A)'s phrase "during and in relation to" superfluous. It does not. There are situations where a possession would be "during and in relation to" drug trafficking without "furthering or advancing" that activity. For example, a drug buyer might steal a gun from his dealer's house during a deal. The buyer's possession would be during and in relation to drug trafficking, but the buyer's possession would not advance that operation. As another example, if a buyer came to the seller's home for a purchase and left a gun there by mistake, the seller's

possession would be "during and in relation to" the trafficking without furthering it.  Thus, "in furtherance" does not render "during and in relation to" superfluous.

The second question concerns the "uses or carries" part of the statute.  If our definition of "possession in furtherance" encompasses every instance of "use or carrying" a firearm "during and in relation to drug trafficking," then we have rendered the "use or carrying" element superfluous.

Given the Supreme Court's interpretation of "use" in <u>Bailey</u>, which requires "active employment," every "use of a firearm during and in relation to drug trafficking" would also seem to constitute a possession that furthers or advances the enterprise.  Similarly, carrying a firearm "during and in relation to" drug trafficking will also always seem to constitute "possession in furtherance." Carrying must fall within the definition of possess.  And carrying a firearm always serves to protect the holder.  Because the carrying must be during drug trafficking, the carrying also furthers the trafficking by protecting the holder during that activity.[4]

---

[4]It is possible that a situation exists that would fall within the "use-or-carrying-during-and-in-relation-to" element but not the "possession-in-furtherance" element.  But because we cannot imagine what that situation would be, for the purposes of the present analysis, we must conclude that the latter element renders the former superfluous.  Thus, our inquiry must continue.

Thus, giving "in furtherance" the broad dictionary definition seemingly renders other parts of the statute superfluous. That concerns us. The rest of § 924 is of no help in resolving this ambiguity, however, because we find no other uses of the term "in furtherance."

We will therefore turn to the legislative history of this statute to seek further guidance. As already discussed, the earlier version of § 924 criminalized use and carrying, but not possession. In United States v. Bailey, 36 F.3d 106, 115 (D.C. Cir. 1994)(en banc), the D.C. Circuit had interpreted "use" to encompass situations where the defendant merely put or kept a gun "accessible and proximate." This would allow the defendant access to the gun to facilitate the drug crime. Id. The Supreme Court, however, overturned the D.C. Circuit, holding that "use" required some active employment. Bailey, 516 U.S. at 148, 116 S.Ct. at 508. In response to that decision,[5] however, Congress amended § 924 to add the "possession-in-furtherance" language. Thus, Congress clearly intended to broaden the reach of the statute in the wake of the Supreme Court's narrow construction. The question is how far Congress intended to go.

---

[5]The Senate bill was titled the "Bailey 'Use or Carry' Firearms Bill."

9

Reading "possession in furtherance" to encompass any possession that furthers, advances, or helps with the drug trafficking would lead to almost the same result as the one reached by the D.C. Circuit concerning "use." Putting or keeping a gun in a place that is accessible and proximate when one is engaged in drug trafficking would further the operation simply by providing protection. Did Congress intend to go that far?

The report on the bill to amend the statute by the House Committee on the Judiciary provides the best indication we have of congressional intent.[6] It begins by reciting the dictionary

_____

[6]There are also two statements by individual legislators made during floor debate, but this type of legislative history is generally unreliable. As Justice Scalia recently noted, "statements of individual Members of Congress [are] ordinarily addressed to a virtually empty floor . . . [and are not] a reliable indication of what a majority of both Houses of Congress intended when they voted for the statute." Crosby v. National Foreign Trade Council, 2000 WL 775550 at *13 (Scalia, J., dissenting).

Moreover, neither of the two statements is helpful:

> The purpose of adding the "in furtherance" language is to assure that someone who possesses a gun that has nothing to do with the crime does not fall under 924(c). I believe that the "in furtherance" language is a slightly higher standard that encompasses "during and in relation to" language, by requiring an indication of helping forward, promote, or advance a crime. This provision applies equally to the individual simply exercising his or her right to own a firearm, as well as the prosecutor who would bring a 924(c) action where there is, arguably, an insufficient nexus between the crime and the gun.

144 Cong. Rec. S16270-71, 1998 WL 723068 (1968)(statement of Sen. DeWine).

10

definition of the term "furtherance." H.R. Rep. No. 105-344 (1997), at 11 (1997). The report then points out that "mere presence" of a firearm at the scene is not enough to convict. Id.

This part of the legislative history probably supports, and certainly does not contradict, the dictionary definition we are considering. The Judiciary Committee's recitation of that definition is a good indication that its use is appropriate. And that definition inherently requires more than "mere presence" of the firearm at the scene.

But the report does not end there. It also suggests that the evidence akin to that actually introduced in Bailey "may be insufficient" to establish possession in furtherance under the proposed new §924(c). Id. at 11-12. The evidence in that case had established that the defendant was arrested with drugs in the passenger compartment of his car, while the firearm was discovered

---

It is also important to note that this bill will not affect any person who merely possesses a firearm in the general vicinity of a crime, nor will it impact someone who uses a gun in self defense. . . . [The bill criminalizes] possession of a gun in the commission of a crime.

144 Cong. Rec. H10,329-01, *H10,330, 1998 WL 701303 (1998)(statement of Rep. Bill McCollum). The DeWine statement uses almost exactly the same words as the dictionary definition of in "furtherance." The McCollum statement seems to contradict that interpretation, since it would exclude the possession of firearms that serve to protect drug dealers. Ultimately, these statements are ambiguous, contradictory, and unreliable. We therefore will ignore them.

during a search of the trunk.  An expert had testified that drug dealers typically carry firearms to protect themselves and their drugs.  The report states, however, that "[a]dditional witness testimony connecting [the defendant] more specifically with the firearm" may be necessary.  Id.

While this portion of the report is somewhat ambiguous, we understand it to reemphasize that "mere presence" is not enough. The "mere presence" test is one based on generality--anytime a drug dealer possesses a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs.  What is instead required is evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense.

Some factors that would help determine whether a particular defendant's possession furthers, advances, or helps forward a drug trafficking offense might include: the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

These factors help distinguish different types of firearm possession.  For example, a drug dealer whose only firearms are

12

unloaded antiques mounted on the wall does not possess those firearms "in furtherance" of drug trafficking. Nor will a drug trafficker who engages in target shooting or in hunting game likely violate the law by keeping a pistol for that purpose that is otherwise locked and inaccessible.

We therefore conclude that using the dictionary definition of "in furtherance" is the appropriate way to construe the statute. There are four reasons for doing so. First, the dictionary definition remains our first and most reliable resource in construing the language of a statute, while the canons' primary use is to resolve ambiguity. Here, it is the canon itself that creates the ambiguity. Given the choice, we favor the plain meaning of the words themselves.[7] Second, surplusage in this statute is understandable given the history behind the amended version of § 924. In the wake of Bailey, the Court sought to broaden the statute by amending it to include "possession in furtherance." It would not surprise us if Congress gave less consideration to the way the new words interacted with the rest of the statute than Congress normally would if drafting a provision from scratch. Thus, we are more willing to overlook the surplusage of "use" and

_____

[7]And we clearly do have such a choice. As the Supreme Court explained in Bailey, we must "hesitate. . . to treat statutory terms [as surplusage]." 516 U.S. at 145, 116 S.Ct., at 506-07. That does not mean that we must never do so.

13

"carrying" in this case.  Third, the legislative history seems to support this construction in referring to the dictionary definition as well.  Fourth, we have found no suggestion of any other meaning for the term "in furtherance."  Nor can we envision a way to further limit that term than in the manner provided by the dictionary definition.

Thus, firearm possession that furthers, advances, or helps forward the drug trafficking offense violates the statute.  In the present case, the evidence before us supports a conclusion that Ceballos's possession of the Glock was "in furtherance" of his drug trafficking offense.  The weapon was loaded and easily accessible in Ceballos's apartment, and he confessed to ownership of the firearm.  It was stolen and possessed illegally.  And it was possessed in the apartment along with a substantial amount of drugs and money.[8]  Together, these factors reasonably support a finding that Ceballos's gun protected his drugs and money against robbery. Possession of the Glock was, therefore, in furtherance of drug trafficking.

### III

For the reasons stated herein, Ceballos's conviction is

A F F I R M E D.

---

[8]Though the government presented no evidence on this point, we understand that Glocks are favored by participants in drug trafficking operations.

14