

Opinions of the United
States Court of Appeals
for the Third Circuit

2006 Decisions

11-28-2006

# USA v. Ingram

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3704

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Ingram" (2006). *2006 Decisions*. Paper 155.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/155

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3704
_____

UNITED STATES OF AMERICA

v.

ERIC J. INGRAM,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 03-CR-00109)
District Judge: Honorable Joseph J. Farnan, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
September 15, 2006

Before: FUENTES, FISHER and McKAY,[*] *Circuit Judges*.

(Filed:  November 28, 2006)

_____

OPINION OF THE COURT
_____

---

[*]The Honorable Monroe G. McKay, United States Circuit Judge for the Tenth
Circuit, sitting by designation.

McKAY, *Circuit Judge*.

Appellant Eric Ingram challenges his conviction for cocaine possession and firearms charges on grounds of insufficiency of the evidence and erroneous denial of his suppression motion.

The evidence adduced at trial establishes the following facts, which we lay out in detail because of the sufficiency of the evidence challenge. On September 17, 2003, Detective Marvin Mailey, an eleven-year veteran of the Dover City Police Department ("DCPD") and five-year member of the Drug Enforcement Agency ("DEA") Task Force, directed a confidential informant ("CI") to place several calls to various telephone numbers believed to be associated with Appellant in order to arrange a buy-bust operation. The first call was placed to Maurice Bell, an associate of Appellant's whom Detective Mailey understood was also Appellant's roommate, to order cocaine base and cocaine powder. Mr. Bell agreed to supply the drugs and traveled to an arranged location to complete the transaction. As a result of the operation, Mr. Bell was arrested after a large quantity of cocaine base and cocaine powder was found in his vehicle.

Later that day, the CI placed several calls to a cellular telephone believed to be owned by Appellant. The cellular telephone number was supplied to Detective Mailey one month earlier by another informant in an unrelated investigation. The CI asked Appellant for cocaine base and was told to come to an apartment to complete the

2

purchase.[1]  The CI had previously purchased drugs from Appellant at this same apartment.  DCPD Detective David Boney then took up surveillance of that apartment.  Once Detective Boney was in place, the CI placed another call to the same number and asked if the transaction could take place at a local grocery store parking lot instead.  Appellant instructed the CI to wait to be picked up and brought to the apartment.  This instruction prompted Detective Mailey and DEA Agent Dave Zon to proceed to the apartment complex, where they took up a surveillance position.  Detective Boney observed Keith Cubbage, Appellant's associate, leaving the subject apartment shortly after the CI's second phone call.  Police took Mr. Cubbage into custody when he arrived to retrieve the CI.  Mr. Cubbage was driving a vehicle that police believed to be owned by Appellant.

Detective Mailey and Agent Zon maintained surveillance of the apartment while awaiting word that Appellant had been taken into custody.  While waiting, Detective Mailey observed Appellant on the balcony of the apartment.  Detective Mailey recognized Appellant both from arrest photographs contained in the Delaware Justice System computer database as well as first-hand observations of Appellant on several prior occasions in the Dover area, including at the same apartment complex.  Detective Mailey was surprised Appellant had not left to meet the CI.  Detective Mailey then observed Appellant dumping a white powdery substance out of a bag and saw clumps of a

---

[1] Mr. Bell was the sole, registered lessee of the apartment.

substance believed to be crack cocaine falling to the ground. Detective Jeffrey Matthews, another member of Detective Mailey's team, who was conducting foot patrol surveillance of the area, witnessed two men on the balcony and saw something fall to the ground. He also saw the men putting unidentifiable items into a plastic bag. Detective Matthews identified one of the men as William Friends. Detective Mailey believed that the men realized their associates had been arrested and were destroying drug evidence.[2]

Detective Mailey and Agent Zon then ran inside the building and to the apartment while Detective Matthews joined Detective Boney in covering the front entrance to the apartment building. Detective Mailey and Agent Zon knocked on the door and identified themselves as police officers. They testified that they heard quick movement and scrambling inside the apartment. Approximately four to five minutes later, Lakisha Tolson answered the door wearing a nightgown and a pair of jeans. At the time, neither Detective Mailey nor Agent Zon knew Ms. Tolson; Ms. Tolson later testified that she was Appellant's girlfriend and that she occasionally stayed at the apartment. The detectives then conducted a security sweep of the apartment. Appellant was not present. When the officers asked Ms. Tolson where they could find Appellant, she stated that she did not know Appellant. Mr. Friends and Ms. Tolson were detained in the living room of the apartment.

---

[2] Appellant's cellular telephone records show Appellant placed two calls to the CI roughly thirty minutes after Mr. Cubbage left to pick up the CI. The CI was to be picked up at a store located 800 yards from the apartment.

After securing a search warrant, the officers conducted a full search of the apartment. This search turned up 549 grams of crack cocaine base in the freezer, broken into two piles, one packaged and the other unpackaged.[3] The kitchen counter had two boxes of baking soda on it as well as white residue later determined to be cocaine residue. This same residue was found in the kitchen sink and on a still-steaming pot left on the counter. Appellant's wallet was found on the kitchen counter, as was his Citizen's Bank card, which had cocaine residue on it. An identification card belonging to Mr. Cubbage was located on the kitchen table. A manual for a Steyr semi-automatic handgun and $3,600 in cash was found in the living room. One bedroom was unoccupied, but police found a warm, steel pot containing cocaine residue in it. The other bedroom contained men's and women's clothing, airline tickets and boarding passes bearing Appellant's name, a Sprint cellular telephone bill for the number dialed by the CI bearing Appellant's name, a Citizen's Bank statement bearing Appellant's name but listing a separate address, a picture of Appellant with another person, and 16.8 grams of marijuana. Officers recovered a fork and crack cocaine residue from the toilet in the hallway bathroom. Outside the apartment's east-facing window, officers found a Steyr gun case containing a semi-automatic Steyr handgun, two loaded magazines, and a receipt for the weapon

---

[3] At trial, a Delaware State Police and DEA Task Force member testified that crack cocaine is typically placed in a refrigerator or freezer after it is "cooked" in order to quicken the hardening process. The estimated value of the nineteen ounces of crack cocaine was approximately $17,000 based on per ounce pricing, though the street value would increase to $25,000 if sold on a half-ounce basis and to as much as $71,000 when distributed on a user-amount basis.

bearing Appellant's name. Officers noted that the window screen was ajar. Below the balcony, officers retrieved an amount of cocaine.

While waiting for the search warrant, police received a complaint from a citizen residing in a house to the rear of the apartment complex regarding a shopping bag he found in his backyard that contained drugs. Officers retrieved the bag, which contained 616 grams of cocaine, 168 grams of cocaine base, 450 grams of marijuana, a man's ring, two digital scales, and a cellular telephone assigned the number listed on Appellant's Sprint bill.

After completing the search and seizing the evidence, Detective Mailey locked the apartment from the inside and exited the apartment by jumping off the balcony because the police did not have a key to the front door. Appellant was arrested in Ms. Tolson's company on December 7, 2003, at a Dover hotel.

Appellant was indicted on charges of (1) possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); (2) possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (3) possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); and (4) possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1). Appellant filed a motion to suppress evidence based on lack of probable cause, which the district court denied. A jury found Appellant guilty of Counts 1 and 4, not guilty of Counts 2 and 3, and guilty of the lesser included offense of possession with intent to distribute cocaine

associated with Count 2. Appellant then filed a motion for a new trial based on alleged prosecutorial discovery violations, which the district court denied. This appeal followed.

We review a district court's denial of a motion to suppress for clear error concerning underlying factual findings but exercise plenary review with respect to application of the law to those facts. *See United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005). The district court rejected the government's contention that Ms. Tolson provided valid consent to their entry, but found exigent circumstances justified the warrantless entry. "When Government agents . . . have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified." *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973). Courts analyze emergency circumstances on a case-by-case basis, paying particular attention to

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, (2) reasonable belief that the contraband is about to be removed, (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, (4) information indicating the possessors of the contraband are aware that the police are on their trail, and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic."

*Id.* at 268-69 (internal citations omitted).

The district court's cogent analysis of the facts establishes that the *Rubin* test was satisfied. Detective Mailey had reliable knowledge from several confidential informants

that drug activity occurred at the apartment. In addition, the known lessee of the apartment was arrested earlier that day in possession of large quantities of drugs. Most notably, Detective Mailey personally observed Appellant and another person attempting to destroy what he believed, based on his extensive experience, to be cocaine.[4]

Appellant argues that the fact that Mr. Cubbage and Mr. Bell were held incommunicado following their detentions renders it impossible for Appellant to have been aware that police were closing in. However, Detective Mailey expressed his surprise that Mr. Cubbage, rather than Appellant, went to pick up the CI. This, coupled with the fact that neither Mr. Bell nor Mr. Cubbage returned to the apartment, reasonably sparked Detective Mailey's belief that Appellant was aware of police intervention. This belief was confirmed by Appellant's two cell phone calls to the CI following Mr. Cubbage's failure to return. Moreover, Detective Mailey observed attempted destruction of evidence, which is unlikely to occur absent a belief that police are closing in.

Appellant cites *United States v. Coles*, 437 F.3d 361 (3d Cir. 2006), in an effort to establish that the police manufactured the exigent circumstance. However, *Coles* is inapposite because the police in that instance had no reason to suspect evidence

---

[4] We attribute no weight to Appellant's contention that Detective Mailey perjured himself by testifying to this observation even though this observation was not included in the search warrant. Detective Mailey stated that this omission was an oversight. His observation was recorded in his police report and is supported by Detective Matthews' observation that items were tossed from the balcony. The district court assessed Detective Mailey's credibility and found these facts at the suppression hearing, and the jury did the same at the trial.

destruction beyond mere sounds emanating from the hotel room. Here, in addition to the scuffling sounds heard by Detective Mailey and Agent Zon, Detective Mailey testified to first-hand observation of evidence destruction. *See United States v. Acosta*, 965 F.2d 1248, 1257 (3d Cir. 1992) (finding police observation of evidence being thrown out window justified exigent circumstance entry); *see also Rubin*, 474 F.2d at 269.

Appellant also asserts that Detective Mailey's and Agent Zon's willingness to wait four to five minutes for an occupant to open the door rather than immediately breaching it supports this manufacturing theory. We agree with the district court that the police, in choosing to wait four to five minutes for compliance with their request to open the door, did not waive the exigent circumstance exception.[5] Accordingly, "[a]lthough some evidence may have been capable of being destroyed in the officers' four to five minute delay, it is likely that much more evidence would have been destroyed in the hours it takes to secure a warrant." (R. A-127.) Thus, we believe that, under *Rubin*, the circumstances justified warrantless entry under the exigent circumstance exception.

In reviewing whether a jury verdict is based on legally sufficient evidence, our standard of review is "'particularly deferential.'" *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002) (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)). We do not weigh the evidence or determine the credibility of the witnesses. *See id.* "We

---

[5] To decide otherwise and require immediate and unrestrained breach in all instances risks establishing a dangerous precedent, both to the welfare of law enforcement officials as well as to Fourth Amendment rights.

must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." *United States v. Beckett*, 208 F.3d 140, 151 (3d Cir. 2000); *see also United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992) ("The evidence need not be inconsistent with every conclusion save that of guilt, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt.").

In order to sustain the conviction for possession under Count 1 and the lesser included offense of Count 2, there must be substantial evidence that Appellant, who was not found in the apartment, had constructive possession over the cocaine. To establish constructive possession, the government must present "sufficient evidence to support an inference that the individual 'knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons.'" *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (quoting *United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992)). "'Such dominion and control need not be exclusive but may be shared with others.'" *Id.* (quoting *United States v. Davis*, 461 F.2d 1026, 1035 (3d Cir. 1972)).

Although "'mere proximity to the drug, or mere presence on the property where it is located or mere association with the person who does control the drug or the property'" is insufficient to establish dominion or control, *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir. 1996) (quoting *Brown*, 3 F.3d at 680), "evidence that the defendant attempted to hide or to destroy the contraband" is sufficient evidence. *Id.* (citing *Davis*, 461 F.2d at

10

1034-36). Detective Mailey's testimony regarding his first-hand observation of Appellant dumping what was rightly perceived to be cocaine from the balcony constitutes compelling evidence of Appellant's constructive possession of cocaine. Indeed, it places the drugs directly in Appellant's hands.

Moreover, the record is replete with evidence that Appellant had dominion over the apartment. Although Mr. Bell was the sole lessee, the evidence revealed Appellant's numerous belongings in the only occupied bedroom. In addition, Appellant's girlfriend admitted that she stayed there on occasion, and some of her belongings were found in the bedroom. Therefore, it was reasonable for the jury to infer that Appellant was the primary occupant of the apartment.

The record also shows that Appellant had control over the drugs. In addition to Detective Mailey's testimony that the CI stated he previously had purchased drugs from Appellant at the apartment, phone calls on the day of the arrest revealed Appellant's willingness to transact drug business there. The presence of steaming and warm pots covered in cocaine residue, crack piles in the freezer, and cocaine residue on the counter demonstrated evidence of a crack "cook" going on shortly before Detective Mailey's team entered the apartment, and at a time when Detective Mailey saw Appellant on the balcony. Appellant's bank card bore traces of cocaine residue from which the jury could infer that it was used to cut cocaine powder. The fact that Appellant's wallet was found on the same counter permits an inference that Appellant either cut the cocaine powder or provided the card for that purpose.

11

The fact that Appellant was not found in the apartment is not dispositive on the issue of his lack of involvement. Aside from Detective Mailey's testimony placing Appellant in the apartment, the CI's conversations with Appellant indicate he was there, and Detective Matthews testified that he saw two men on the balcony. Mr. Friends was the only male in the apartment when the police entered. After Detective Mailey and Agent Zon entered the building, no officers were surveiling the rear of the building, and the police therefore had no view of the balcony. Given Detective Mailey's testimony that he jumped from the balcony to exit the apartment following execution of the search warrant and the fact that this exit was no longer under surveillance when Detective Mailey and Agent Zon entered the apartment, the jury reasonably could have inferred that Appellant fled the apartment by jumping from the balcony.

Appellant's attempt to link the acquittals on Count 2 and Count 3 to specific evidence in an effort to prove the drugs were not in Appellant's possession are equally unavailing. Viewing the evidence in the light most favorable to the prosecution, even if the jury did not attribute any of the evidence found in the neighbor's yard to Appellant, the drug evidence found in the apartment and below the balcony was sufficient to support the jury's conviction on Count 1 and the lesser included offense of Count 2 for possession of cocaine without a requirement of a minimum quantity.

We also believe that, taking the evidence in the light most favorable to the prosecution, there is substantial evidence linking the handgun found outside the east-facing window to Appellant's drug activity. "Under § 924(c), the 'mere presence' of a

12

gun is not enough." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). "'What is instead required is evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense.'" *Id.* (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414 (5th Cir. 2000)). As in other circuits, we look to the following nonexclusive factors in assessing this link:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* (quoting *Ceballos-Torres*, 218 F.3d at 414-15) (collecting cases). Appellant's primary argument is that, since the weapon was found outside the apartment, the government cannot establish it was stored anywhere else, and it therefore could not have been used in relation to any drug activity. However, "[w]hile the location of a firearm is admittedly relevant, immediate accessibility at the time of search or arrest is not a legal requirement for a § 924(c) conviction." *Id.* at 853. The government offered evidence that the cocaine in the freezer had a retail street value of $17,000 and that semi-automatic handguns, like the recovered Steyr, are the preferred type of weapons for protection by drug dealers. The government showed that the handgun manual was found inside the apartment and that the handgun case containing the handgun and the loaded magazines was found outside a window screen that was ajar. Appellant's argument that the government cannot establish the presence of the gun in the apartment is not convincing, to say the least. First, this argument is belied by the presence of the handgun manual. Second, it is

13

irrational to believe that Appellant stored his lawfully owned gun in the bushes outside an apartment window; conversely, based on the window screen that was found ajar, the destruction of evidence, and Appellant's apparent escape, it is reasonable to infer that Appellant tossed the gun out of the apartment to hide it from the police. This evidence, coupled with evidence relating to the ongoing crack "cook" and evidence relating to Appellant's residence in, and dominion over, the apartment, alongside the testimony that Appellant and Mr. Friends disposed of drug evidence by throwing it off the balcony—thereby permitting an inference that the handgun was disposed of in the same fashion[6]—demonstrates substantial evidence supporting the jury's finding that Appellant possessed the firearm in furtherance of a drug trafficking crime. The fact that Appellant legally purchased the handgun is irrelevant to how it was used.

Consequently, based an examination of the legally sufficient and substantial evidence presented in this case, we will affirm the district court's denial of Appellant's motion to suppress and will affirm the jury's conviction.

---

[6] This inference remains permissible despite the surveiling officer's testimony that he did not see anything thrown from the window.