**UNITED STATES of America**

v.

**Miguel RAMIREZ, Appellant.**

**No. 05–4103.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 27, 2007.

Filed: Oct. 3, 2007.

K. Kenneth Brown, II, Office of District Attorney, Lancaster, PA, for United States of America.

Carlos A. Martir, Jr., Martir & Garcia, Philadelphia, PA, for Appellant.

Before: McKEE, BARRY and FISHER, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Miguel Ramirez was convicted of distributing approximately 6.4 grams of a methamphetamine-containing substance, in violation of 21 U.S.C. § 841(a)(1); possessing with the intent to distribute approximately 54.65 grams of a methamphetamine-containing substance, in violation of 21 U.S.C. § 841(a)(1); and possessing a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). He now challenges the sufficiency of evidence supporting the jury's verdict, and the admission of expert testimony at his trial. For the reasons that follow, we will affirm the judgment of the District Court.

## I.

As we write only for the parties, we will forgo a lengthy recitation of the factual and legal background to this case. On October 31, 2003, Adam Miller, a detective with the Lancaster County Drug Enforcement Task Force, placed a call to Ramirez's cell phone. Acting undercover, Detective Miller arranged to purchase methamphetamine from Ramirez at Ramirez's residence. Less than an hour later, Ramirez delivered four clear, stamp-sized plastic bags that held 6.4 grams of a

methamphetamine-containing substance to Detective Miller in exchange for $700. The methamphetamine was kept in a small wooden cigar box underneath the coffee table in Ramirez's living room.

Subsequently, on December 12, 2003, Detective Miller along with other members of the Drug Enforcement Task Force executed a state search warrant on Ramirez's residence. As he entered the residence, Detective Miller noticed a digital scale with a bag of what appeared to be crystal methamphetamine on top and a torn bag containing methamphetamine on the floor in front of where Ramirez was eventually arrested. Ramirez also had a bag containing approximately 28 grams of methamphetamine in his pocket. During the search, detectives also seized the wooden box that Detective Miller noticed when he originally purchased the drugs from Ramirez.

Near the digital scale and the bag of methamphetamine that were found in Ramirez's dining room, detectives found a Glock .45 caliber semiautomatic pistol, which was loaded with ten live rounds of ammunition. This gun, along with a holster and two spare magazines, was located in an open bag next to the scale. There were no protective glasses or other sporting equipment located in or near the bag.

As the detectives continued to search Ramirez's residence, they came upon another wooden box in the master bedroom. This box contained assorted drug paraphernalia, a scale, and a small amount of what appeared to be marijuana. In the closet of the bedroom, detectives found an unlocked safe that contained a Taurus 9mm semiautomatic pistol, loaded with ten live rounds of ammunition. Next to this safe was a black lockbox containing $5,000 and a notebook where Ramirez had recorded debts owed to him by various people for methamphetamine.

After his arrest on December 12, 2003, Ramirez waived his *Miranda* rights and consented to be interviewed by detectives. During the interview, he admitted that the drugs, money, and guns seized in the search were his, and that he possessed the drugs with the intention to provide them for sale to others. Although he initially claimed that the handguns were for target shooting, he later stated that they were to protect the house.

During Ramirez's jury trial for drug charges, the Government introduced the evidence noted above, including the drug sale to Detective Miller and the items found in the search of his home. In addition, the Government offered the expert testimony of Detective John Ator to address the Government's claim that the firearms found at Ramirez's residence were possessed in furtherance of a drug trafficking offense. His testimony included his views on a hypothetical question posed by the Government. Specifically, the testimony included the following exchange:

Q. Now, Det. Ator, I'm going to ask you a hypothetical question. This is in your capacity as an expert witness as you've been previously qualified.

Detective, assume for purposes of this hypothetical, that a substantial amount of narcotics are found in one room of a multi-room apartment in close proximity to drug paraphernalia and a loaded handgun. Another room, in the closet of that other room contains a scale, other drug paraphernalia, a substantial amount of cash and another loaded handgun. Based on those facts, are you able to form any expert opinions within your field of expertise?

. . . .

A. Based on the facts of the hypothetical, those firearms would be consistent with furthering of drug trafficking.

(Supp. App. at 199). Ramirez, on the other hand, testified that he had obtained a permit to carry a concealed firearm for target shooting. However, the reason listed on the permit was "self defense," and he admitted during cross-examination that "having a gun accessible during a drug transaction could provide protection in case a drug deal would go sour." *Id.* at 259.

On April 6, 2005, the jury found Ramirez guilty on all counts, and the District Court subsequently sentenced him to 120 months imprisonment. This appeal followed.

## II.

We exercise jurisdiction in this case pursuant to 28 U.S.C. § 1291. Because Ramirez did not raise an objection to the sufficiency of the evidence at trial, we will reverse only if we find clear error. *See, e.g., United States v. Wolfe*, 245 F.3d 257, 260–61 (3d Cir.2001). "This standard is met when there is an 'error' that is 'plain' and that 'affects substantial rights.'" *Id.* at 261 (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). In addition, we review a district court's decision to admit expert testimony for abuse of discretion. *See, e.g., Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir.2000).

## III.

### A.

■ Ramirez's first argument is that there was not sufficient evidence produced at trial to sustain the jury's verdict that he possessed the firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). He claims that he was the lawful owner of the two handguns for sporting and self-defense purposes, and that there is no evidence that he ever attempted to reach for the guns during any of his interactions with law enforcement.

"Under § 924(c), the 'mere presence' of a gun is not enough. 'What is instead required is evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense.'" *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir.2004) (quoting *United States v. Ceballos–Torres*, 218 F.3d 409, 414 (5th Cir.2000)). Among the non-exclusive factors relevant to making such a determination are "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (quoting *Ceballos–Torres*, 218 F.3d at 414–15) (internal quotation marks omitted). Finally, although "the location of a firearm is admittedly relevant, immediate accessibility at the time of search or arrest is not a legal requirement for a § 924(c) conviction." *Id.*

In the case before us, there was certainly sufficient evidence to sustain the jury's verdict. Both of the guns found in Ramirez's home were located close to other items related to his drug trafficking activities, such as scales, drug profits, and the drugs themselves. Each contained ten live rounds of ammunition. Finally, belying Ramirez's claim that the guns were for sporting purposes, he did not have a membership to any gun club and there were no sporting-related items anywhere near the guns. Accordingly, we conclude that there was sufficient evidence to support the jury's verdict that the guns were possessed in furtherance of a drug trafficking crime.

### B.

■ Next, Ramirez argues that the District Court erred by allowing the expert testimony of Detective Ator because it violated Federal Rule of Evidence 704(b)'s prohibition against testimony about a defendant's mental state, and was not proper expert testimony under Federal Rule of Evidence 702. We disagree.

As we have explained in the past when discussing Rule 704(b), "[e]xpert testimony is admissible if it merely 'support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.'" *United States v. Watson*, 260 F.3d 301, 309 (3d Cir.2001) (quoting *United States v. Bennett*, 161 F.3d 171, 183 (3d Cir.1998)).

In *United States v. Davis*, 397 F.3d 173 (3d Cir.2005), for example, the Government posed a hypothetical question similar to the one asked in the instant case. The expert witness in *Davis* was asked "whether, assuming that 'five persons were in a car, four of whom possessed handguns,' and that 'one person possessed a handgun with 12 packets, another person possessed a handgun with 19 packets, [and] one person ... possessed a handgun with 44 packets,' 'would you say that would be consistent with drug trafficking or consistent with possession, simple possession.'" *Id.* at 177. He responded that such behavior was consistent with "possession with intent to deliver the narcotics." *Id.* Although this hypothetical question closely mirrored the facts of the defendant's case, we determined that it was not an error to admit the testimony under either Rule 702 or Rule 704 because the "testimony was given in response to hypothetical, rather than specific, questions regarding the intent of individual defendants on trial." *Id.* at 179.

The testimony admitted in the instant case is no different. Detective Ator was asked a hypothetical question that closely mirrored the facts of Ramirez's case,[1] and he answered that his experience tended to suggest that such a situation was consistent with the possession of a firearm in furtherance of a drug trafficking crime. Because the testimony involved hypothetical, rather than specific, questions, the District Court did not err by admitting it.

### IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

1. Ramirez also argues that this testimony was inadmissible because there are many differences between the hypothetical posed to Detective Ator and the facts of Ramirez's case. However, Ramirez's counsel was free to exploit any differences during cross-examination of Detective Ator, leaving the ultimate question up to the jury to decide.