# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 10, 2009

No. 07-41025
Summary Calendar

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

CARLOS THOMAS FLORES

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:07-CR-619-1

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellant Carlos Thomas Flores challenges the sufficiency of the evidence supporting his conviction for conspiracy to possess cocaine with intent to distribute, possession of cocaine with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime. Finding no error, we AFFIRM Flores's conviction.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.     Background

In October 2006, Alice Solis, an investigator with the Texas Department of Family and Protective Services ("CPS"), received information that two individuals were using cocaine at the home of co-conspirator Edgar Kladis in Laredo, Texas, endangering the welfare of their children, and that the home was being used for drug dealing. When Solis entered the home to investigate the report, she encountered Kladis and observed marijuana, pills, and a scale. Kladis tested positive for cocaine use. On December 18, 2006, CPS officials obtained court approval to remove the children from that home. When Solis and her aide arrived, they observed several vehicles driving up to the residence and individuals entering the home for a brief time. Some drivers remained in their automobiles as Kladis came outside, leaned through the vehicle window to briefly interact with the occupants, and went back into the house about one minute later. He did not get into any of the vehicles, and the autos were there only a few minutes before driving away. Solis estimated that she saw ten vehicles arrive while she was watching the house, and each remained about five minutes.

Texas Department of Public Safety Sergeant Cornelio Flores and Trooper Abundio Medina were dispatched to the house to assist Solis in her effort to remove the children. As the officers arrived, they saw a pickup truck containing two occupants parked in the driveway. The truck's motor was running, and its dome light and headlights were on. Solis, Sergeant Flores, and Trooper Medina walked up to the passenger's side and Solis recognized the passenger as Edgar Kladis. The driver, later identified as appellant Carlos Flores, was holding a small piece of tin foil and twisted his body and hunched over the center console where silver aluminum paper, suspected cocaine, and a black digital scale were

in plain view.[1] Sergeant Flores identified himself as a police officer and ordered the occupants to place their hands on the dashboard. Kladis complied, but Flores did not. Instead, he swept items from the center console with his right hand toward the front and toward himself. Flores's right hand then went between his legs, as if he was reaching for a weapon. Again ordered to place his hands on the dashboard, Flores slowly reached for the steering wheel, putting his left hand on top. Finally, Trooper Medina opened the door and pulled Flores from the truck, at which time the officers heard a thump in the vicinity of the driver's side floorboard. Sergeant Flores and Trooper Medina later found a loaded .40 caliber firearm, with a round of ammunition in the chamber, on the driver's side floorboard. The firearm was operable and had been reported stolen in Grants Pass, Oregon.

During a search of the truck, the officers found the foil and some of the white substance lodged between the center of the console and the driver's seat. There were also chunks of the same substance, which later tested positive for cocaine, on the driver's side floorboard. The cocaine in the front of the truck had a net weight of 24.68 grams and an approximate value of $617. The digital scale had cocaine residue on it and was found on the center floorboard. The lid of the digital scale and five twenty dollar bills were still on the console, and pieces of foil, consistent with packaging smaller quantities of cocaine for redistribution, were inside the console. Flores later stated to the officers that the money was his. In the back seat of the truck was a black sports bag containing a plastic freezer bag within which was a brick of compressed cocaine with a net weight of 129 grams. The cocaine had an approximate worth of $3,225. The sports bag also contained a plastic shopping bag with live and spent ammunition, including .40 caliber bullets. In the truck's bed, the officers found a saddle, a lariat rope,

---

[1] Sergeant Flores testified that such a scale is consistent with cocaine distribution.

a saddle blanket, a welder's helmet, and welding tools. Testimony indicated that the truck was registered to Flores's father, that Flores had been a student in a welding class in the fall of 2006, and that Flores had approached an individual in 2004 to learn the basics of roping. The contents of the truck bed were later released to Flores's father. Another scale was recovered in a search of Kladis's home, but the officers found no additional drugs or weapons.

Among other things, expert witnesses testified that the form of the cocaine found on the console and the driver's side floorboard was inconsistent with personal use, and the form and quantity of the compressed brick of cocaine in the sports bag was not consistent with sale to an end-user. The cocaine in the sports bag had not been mixed with any adulterant, and was in a compressed form commonly used for shipping large quantities of cocaine. An expert also testified about the connection between firearms and narcotics trafficking; that is, that firearms are used in furtherance of drug trafficking to protect cocaine, safeguard an individual from other traffickers, for personal safety, and possibly for protection from law enforcement. Flores was convicted of all three counts at trial and subsequently sentenced to concurrent terms of twenty-seven months' imprisonment for the narcotics offenses, consecutive to a sixty-month sentence for the firearms violation.

On appeal, Flores contends that the evidence was insufficient to establish his guilt for the three offenses charged. He instead urges that the circumstantial evidence gives equal support to a theory that Flores was simply a purchaser of cocaine from Kladis and therefore cannot be convicted of the conspiracy or substantive distribution count. In addition, Flores argues that the evidence was insufficient to establish that any purported possession of the firearm was in furtherance of a drug trafficking crime.

## II.    Standard of Review

Because the appellant raised his sufficiency claims in a timely motion under Rule 29 of Federal Rules of Criminal Procedure, this Court reviews de novo "whether the evidence, when reviewed in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction, allows a rational fact finder to find every element of the offense beyond a reasonable doubt." *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002) (quoting *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)); *see also United States v. Izydore*, 167 F.3d 213, 219 (5th Cir. 1999). This review is highly deferential to the verdict. *Harris*, 293 F.3d at 869. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999).

## III.    Analysis

### A.    Narcotics Offenses

To establish a conspiracy to possess cocaine with intent to distribute, the government must prove (1) the existence of an agreement to possess and distribute cocaine; (2) Flores's knowledge of that agreement; and (3) Flores's voluntary participation in the conspiracy. *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). An express agreement is not required, and each element of the crime may be established by circumstantial evidence. *United States v. Infante*, 404 F.3d 376, 385 (5th Cir. 2005). However, the mere presence of a defendant is insufficient to support a conspiracy conviction. *United States v. Paul*, 142 F.3d 836, 840 (5th Cir. 1998). Evidence of a buyer-seller relationship cannot, alone, establish a conspiracy. *United States v. Mata*, 491 F.3d 237, 241 (5th Cir. 2007).

Possession of cocaine with intent to distribute requires proof beyond a reasonable doubt that Flores knowingly possessed a controlled substance with the intent to distribute it. *See United States v. Patino-Prado*, 533 F.3d 304, 309 (5th Cir.), *cert. denied*, 129 S. Ct. 328 (2008). "To be guilty of aiding and abetting possession of drugs with intent to distribute, [the] defendant must have aided and abetted both the possession of the drug and the intent to distribute it." *United States v. Williams*, 985 F.2d 749, 753 (5th Cir. 1993). "[T]he intent to distribute may be inferred from the quantity and quality of the cocaine . . . and from possession of a scale of a type commonly used in the distribution of narcotics." *United States v. Prieto-Tejas*, 779 F.2d 1098, 1103 (5th Cir. 1986).

The evidence elicited at trial was clearly sufficient to permit a rational trier of fact to find the essential elements of the narcotics offenses beyond a reasonable doubt. According to the government witnesses, Flores was discovered in the driver's seat of a running vehicle in close proximity to almost an ounce of cocaine, foil, scales, and cash. The truck was registered to Flores's father and contained items consistent with Flores's dominion and control. Flores was observed conducting a narcotics transaction with Kladis, and a number of witnesses stated that they saw Flores handling a large chunk of cocaine as they approached. The cocaine appeared to have been broken off a kilo brick of cocaine. Kladis had previously been found in a home with scales consistent with cocaine distribution, and Solis observed Kladis conduct approximately ten hand-to-hand drug transactions earlier that evening. The officers found no additional narcotics in his home.

As the officers identified themselves, Flores attempted to conceal the drug evidence. When the officers searched the truck, they found a sports bag containing a brick of compressed cocaine in the back seat. The cocaine was packaged in a manner and was in an amount consistent with distribution or trafficking rather than personal use. It had not been mixed with any adulterant

for resale. There was also a bag of ammunition in the sports bag that included bullets of the same caliber as the firearm found near Flores. Of course, the presence of a firearm on or near Flores is also consistent with his knowing participation in the narcotics offenses. *See, e.g., United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir. 1987) (firearms are "tools of the trade" of those engaged in illegal drug activities).

Flores suggests that the evidence is "equally consistent" with a simple buyer-seller relationship where he was purchasing cocaine from Kladis.[2] He argues that the prosecution impermissibly strung together inferences to reach an improbable conclusion, citing *United States v. Rojas Alvarez*, 451 F.3d 320, 326 (5th Cir. 2006). However, the trial evidence does not give equal or nearly equal support to this theory of innocence. Kladis had not entered anyone else's car that night despite making several sale transactions in his driveway. A search of Kladis, the area in the truck around him, and the house where he was staying revealed no gun to which the ammunition in the sports bag belonged nor any additional cocaine. Further, it is not equally plausible to think Kladis would put his entire cocaine stash in the back seat of someone else's car out of his reach, nor that he would choose to conduct a drug transaction in the running car before being driven away from the home. It is also not equally plausible that Flores, as a drug purchaser, would be armed, while Kladis, as a drug dealer carrying a significant amount of cocaine, would be unarmed.

The direct and circumstantial evidence presented at trial, when reviewed in the light most favorable to the jury's verdict, permits a rational fact finder to

---

[2] At trial, Flores also suggested that the evidence supported a conclusion that Kladis got in the car so that Flores could give him a ride to get away from Solis. Under the facts of this case, this conclusion is not "equally supported," thus we need not reach the question of whether this theory, if true, would support reversal.

find every element of the drug offenses beyond a reasonable doubt. Accordingly, it was sufficient to support his conviction for both narcotics crimes.

### B. Firearms Offense

To establish possession of a firearm in furtherance of a drug trafficking offense, the government was required to show that Flores (1) knowingly possessed a firearm; and (2) that his possession furthered, advanced, or helped forward a drug trafficking offense. *See United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir.), amended on other grounds, 226 F.3d 651 (5th Cir. 2000). This Court has explained:

> Some factors that would help determine whether a particular defendant's possession furthers, advances, or helps forward a drug trafficking offense might include: the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Id*. Here, the evidence was sufficient for a rational factfinder to find every element of the firearms offense beyond a reasonable doubt. The government elicited testimony that Flores was engaged in a hand-to-hand drug transaction with a firearm readily accessible. Flores appeared to be reaching for the gun when the officers approached him, and the close proximity of the gun suggests his intent to exercise dominion and control over it. The stolen handgun was loaded, with a round in the chamber, and was readily available to protect the significant amount of cocaine in Flores's truck. Additional ammunition, including that matching the caliber of the handgun, was found nearby. The firearm was operable, and was not an antique or suitable for hunting.

Flores points to the absence of fingerprint evidence[3] or testimony of his direct physical control over the firearm. However, possession of contraband may be actual or constructive, and such possession may be proven with circumstantial evidence. *See, e.g., United States v. McKnight*, 953 F.2d 898, 901-02 (5th Cir. 1992). Here, a rational juror could conclude that Flores knowingly possessed the .40 caliber handgun found on the driver's side floorboard of his truck, and that such possession furthered his drug trafficking crime. The evidence, viewed in a light most favorable to the government, established that the loaded gun was available to protect Flores during the hand-to-hand transaction and safeguard the thousands of dollars of cocaine found in his truck. Accordingly, the evidence was sufficient for conviction.

## III.    Conclusion

Because a rational juror could have found all essential elements of the three crimes, the evidence was sufficient for Flores's conviction. Accordingly, we AFFIRM.

---

[3] An investigator testified that there were "no usable prints" on the gun.