COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Humphreys and Powell
Argued at Richmond, Virginia


LAMONT DANTE WRIGHT
                                                                OPINION BY
v.        Record No. 0984-07-1                      JUDGE LARRY G. ELDER
                                                              JANUARY 13, 2009
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                              Mark S. Davis, Judge

            Joseph A. Sadighian, Senior Assistant Appellate Defender (Office of
            the Appellate Defender, on briefs), for appellant.

            Joshua M. Didlake, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Lamont Dante Wright (appellant) appeals from his bench trial conviction for possessing a

firearm while possessing cocaine with the intent to distribute in violation of Code

§ 18.2-308.4(C).  On appeal, he contends the trial court erred in concluding that evidence of

constructive possession of either the drugs or the firearm or both was sufficient to support his

conviction; he avers that, under Code § 18.2-308.4(C), proof of actual possession was required.[1]

We hold the trial court properly applied the statute at issue to the facts of this case, and thus, we

affirm the challenged conviction.

---

[1] Appellant also was convicted for possession of cocaine with intent to distribute in
violation of Code § 18.2-248.  In his petition for appeal, appellant alleged the search of his
person and his residence were unreasonable under the Fourth Amendment, but his petition was
denied as to those assignments of error.  He did not contend in his petition for appeal that the
evidence, if properly admitted, was insufficient to support his conviction for possessing cocaine
with an intent to distribute.

I.

BACKGROUND

On September 9, 2006, while working private security for a Portsmouth apartment complex, Detective G.B. Smith stopped appellant for speeding. Detective Smith had had contact with appellant on two or three prior occasions and knew he lived in that apartment complex. In the course of the stop, Detective Smith saw a loaded .9-millimeter handgun in appellant's vehicle, and Detective Smith examined the paperwork appellant had with him that documented the purchase. Detective Smith opted not to issue appellant a summons for the traffic offense and cautioned appellant "to make sure, if he had a handgun with him [in the future], that it was not concealed in any way."

Two days later, based on information from a confidential informant,[2] Detective Smith spotted appellant in the same vehicle in another Portsmouth apartment complex about five miles from appellant's residence. Detective Smith detained appellant, advised him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), and told him they had received an informant's tip that appellant was in that location selling crack cocaine. Detective Smith asked appellant "if he had his gun with him, and [appellant] said that he had left it at his house." A search of appellant's person yielded about 7 grams of crack cocaine, and appellant admitted he had "a lot" more crack cocaine at his residence, about 125 grams. Appellant relinquished his keys so that Detective Smith could open the door to his residence, and he took the officers to his room, where they recovered his loaded gun from a holster hanging on the rail of his bed and 114 grams of crack cocaine from the pocket of a jacket hanging in the bedroom's closet. Also in the room were scales bearing cocaine residue and clear plastic bags with the corners missing. The

---

[2] The legality of the detention conducted based on this information is not before us. See supra note 1.

Commonwealth offered expert testimony that appellant's possession of the crack cocaine under those circumstances was inconsistent with possession for personal use.

At the conclusion of the Commonwealth's case, appellant moved to strike on the firearm charge. He argued he could not be convicted under Code § 18.2-308.4(C), which requires knowing and intentional possession of a firearm while committing or attempting to commit possession with intent to distribute, because the firearm was found five miles away rather than on his person or in his vehicle.

The prosecutor argued that the heightened mandatory penalty of subsection (C) was triggered "with either constructive or actual possession of either or both drugs and the firearm" but conceded he "would have a problem under the law if the defendant had not had any drugs at his house" because "it has to be simultaneous possession. He possesses the drug on his person, but the gun is five miles away. . . . [T]hat is not simultaneous possession, even constructive, because the possession with intent to distribute deals with what's on his person." The prosecutor relied on the "120-some-odd grams of crack cocaine in his bedroom and a firearm in his bedroom. He simultaneously and constructively possesses both."

Appellant responded,

> I don't believe constructive possession is enough under this Code section. I think it's clear. It states that he has to possess the firearm *while committing* or attempting to commit possession with intent to distribute. The detectives testified he was allegedly committing possession with intent to distribute out . . . on Suburban Parkway five miles away from the house [where the gun and additional cocaine were found].
>
>     \*      \*      \*      \*      \*      \*      \*
>
>     If the Code section said "possession of a firearm while in possession [of cocaine as in the previous subsections, with the additional language] with intent to distribute," i.e., leaving out [the "while attempting to commit"] language, then I would agree. I would have no argument. But they clearly put in this language

"while committing or attempting to commit." And, again, he was five miles away when he was allegedly attempting to sell drugs.

(Emphasis added.) When the Commonwealth responded that it did not understand appellant's argument, the following exchange took place:

> THE COURT: Maybe the argument [appellant is making], I think . . . let's look at Subsection B, for example.
> B says, "It shall be unlawful for any person unlawfully in possession of a controlled substance.["] I think [appellant is] suggesting that if the legislature had intended to have a similar standard, it could have said, instead of "while committing," it could have said "in possession of with the intent to commit." . . .
>
> [APPELLANT'S COUNSEL]: That's exactly my argument.
>
>   *   *   *   *   *   *   *
>
> THE COURT: . . . [L]et's parse [appellant's] argument.
> [Counsel's] argument is that the language is different, and let's think it through. [Counsel] is saying that in each of those – granted, they're talking about possession, not possession with intent to distribute, but they say, . . . "A) It shall be unlawful for any person unlawfully in possession of a controlled substance to simultaneously, with knowledge and intent, possess a firearm; and, B) It shall be unlawful for any person unlawfully in possession to simultaneously, with knowledge and intent, possess a firearm."

The Court then inquired of appellant's counsel, "Why is 'simultaneously' [in subsections (A) and (B)] different from 'while' [in subsection (C)], and how does it support your argument?"

Appellant's counsel responded as follows:

> "Simultaneously," to me, is . . . just at the same time, and that is not as strict as "while." "While" means while you're actually committing or attempting to commit possession with intent to distribute. He's got the gun [at his residence in the first apartment complex] five miles away. He's here at the [second apartment complex], allegedly attempting or selling cocaine. That's not while attempting or committing, Your Honor.

The trial court said it "[did not] see that distinction in the statute" and that if "[the legislature] meant what [appellant] [said they] intended [the statute] to mean, they could have

- 4 -

said more." It ruled "that the language . . . doesn't say that all of this has to take place in the exact same location at the exact place" and that the reasoning of "Jefferson [v. Commonwealth, 14 Va. App. 77, 414 S.E.2d 860 (1992),] . . . applies with equal import here." As a result, it denied appellant's motion to strike. Appellant presented no evidence and renewed his motion to strike, which the court again denied.

The trial court convicted appellant of the offenses of possession of cocaine with the intent to distribute and possession of a firearm while in possession of a controlled substance with the intent to distribute. After sentencing, appellant noted this appeal.

II.

ANALYSIS

Appellant contends the Commonwealth was required to prove that he had actual simultaneous possession of the drugs and the firearm and that he "possess[ed]" the firearm "in a threatening manner" while possessing the cocaine with an intent to distribute. We disagree with both assertions.

We begin our analysis by examining the legal principles ordinarily applicable to crimes requiring proof of possession of drugs and firearms. In applying these legal principles to the evidence adduced in the trial court, settled standards of appellate review require us to view the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth. E.g. Rawls v. Commonwealth, 272 Va. 334, 349, 634 S.E.2d 697, 704 (2006).

In interpreting the Commonwealth's basic statutes proscribing possession of drugs, e.g. Code § 18.2-248 (simple possession); Code § 18.2-250 (possession with intent to distribute), or possession of a firearm, e.g. Code § 18.2-308.2 (proscribing possession of a firearm by a convicted felon), the applicable legal principles are clear: Possession may be actual or constructive. E.g. Clodfelter v. Commonwealth, 218 Va. 619, 622, 238 S.E.2d 820, 822 (1977)

(involving drug possession); see Rawls, 272 Va. at 349, 634 S.E.2d at 705 (applying these same principles to the offense of possession of a firearm by a convicted felon). Establishing constructive possession requires proof "that the defendant was aware of both the presence and character of the [item] and that it was subject to his dominion and control." Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession. Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 831-32 (1997). A defendant may constructively possess an item or items in his residence even when he is not on the premises. See Staton v. Commonwealth, 36 Va. App. 282, 287-89, 549 S.E.2d 627, 629-30, aff'd on reh'g en banc, 37 Va. App. 238, 556 S.E.2d 67 (2001).[3] "The law is well established that possession of *the means* to exercise dominion [and] control over an item gives the possessor dominion [and] control over the item [itself]." Bell v. Commonwealth, 21 Va. App. 693, 698-99, 467 S.E.2d 289, 291-92 (1996) (emphasis added) (applying principles governing constructive possession of controlled substances to interpret analogous "possession" language in Virginia's carjacking statute and holding that a car owner who possessed the keys to her car, which was parked around the corner, constructively possessed the vehicle for purposes of the statute criminalizing "depriv[ing] another in possession or control of [a] vehicle of that possession or control" (quoting Code § 18.2-58.1)).

---

[3] The holding in Staton is not unique in Virginia law. See Birdsong v. Commonwealth, 37 Va. App. 603, 560 S.E.2d 468 (2002); Hargraves v. Commonwealth, 37 Va. App. 299, 557 S.E.2d 737 (2002); Jetter v. Commonwealth, 17 Va. App. 745, 746-47, 440 S.E.2d 633, 634 (1994); Wright v. Commonwealth, 2 Va. App. 743, 744-45, 747-48, 348 S.E.2d 9, 11, 12-13 (1986).

If the above legal principles apply to appellant's conviction for possessing a firearm "while committing" the offense of possessing cocaine with the intent to distribute, the evidence in the record, viewed in the light most favorable to the Commonwealth, clearly establishes he possessed a firearm and possessed cocaine with the intent to distribute it. After police found appellant in possession of cocaine at a location five miles from his residence, appellant told police his gun, a set of scales, and an additional, significantly larger quantity of cocaine were in his bedroom. When police took appellant to the residence, he gave them his key and directed them to his bedroom, where they found his loaded gun in plain view in a holster hanging on the bed rail just where appellant said it would be. When they asked appellant where the cocaine was, appellant directed them to look through the pockets of the clothes in the closet, where they found an additional 114 grams of crack cocaine. Also in appellant's room were the scales he had mentioned and some plastic bags with the corners missing, which provided additional indicia of the packaging of drugs for distribution. An expert police witness testified that appellant's possession of the large quantity of drugs, the firearm, scales, and packaging paraphernalia, coupled with the absence of evidence that a smoking device had been found, was inconsistent with the theory that he possessed the cocaine for personal use. Thus, under ordinary constructive possession principles, the evidence was sufficient to prove appellant constructively possessed the firearm in his bedroom while also constructively possessing the cocaine found in the bedroom with an intent to distribute it.

Appellant contends, however, that ordinary constructive possession principles do not apply to his conviction for violating Code § 18.2-308.4(C) and that the Commonwealth was instead required to prove he had actual, simultaneous possession of both the drugs and the firearm. We consider whether the legislative history and prior judicial interpretation of Code § 18.2-308.4 support the interpretation of the statute that appellant advances.

As originally enacted in 1987, Code § 18.2-308.4 provided in relevant part as follows:

> A. Any person unlawfully in possession of (i) a controlled substance classified in Schedule I of the Drug Control Act . . . or (ii) coca leaves and any salt, compound, derivative or preparation thereof as described in Schedule II of the Drug Control Act . . . who simultaneously with knowledge and intent possess[es] any firearm shall be guilty of a Class 6 felony.

> B. Any firearm possessed in violation of this section shall be forfeited to the Commonwealth pursuant to the provisions of § 18.2-310.

1987 Va. Acts, ch. 285.

We interpreted the 1987 version of the statute in Jefferson v. Commonwealth, 14 Va. App. 77, 414 S.E.2d 860 (1992). Jefferson involved the execution of a search warrant, during which police found the defendant leaving the master bedroom in the home of his girlfriend, with whom the evidence established he stayed several night per week. Id. at 80, 414 S.E.2d at 862. On the floor of the closet in that room, police found an ice bucket containing two baggies of cocaine and seven baggie corners containing cocaine. Id. at 78, 414 S.E.2d at 861. On a shelf above the ice bucket, police found a .32 caliber revolver that the defendant admitted was his. Id. at 78-79, 414 S.E.2d at 861. In a clear plastic bag on the floor beside the ice bucket, police found a .9 millimeter automatic weapon that all witnesses claimed belonged to the defendant's nephew. Id. at 78, 414 S.E.2d at 861. Under the bed, police found a set of scales on a piece of glass and a metal lockbox containing over $2,000 in cash, which the defendant also admitted was his. Id. at 79, 414 S.E.2d at 861. During an additional search of the defendant's car, which was located in the driveway, police found two more firearms that the defendant admitted were his. Id. The "sole issue" before us on appeal was whether "*constructive* possession of both items," the drugs and the weapons, was sufficient to support the defendant's conviction under the wording of Code § 18.2-308.4(A) or whether, as the defendant argued, the statute was intended to prohibit only "*actual simultaneous* possession of drugs and weapons."

Id. at 78, 414 S.E.2d at 861 (emphases added). We concluded the statute permitted conviction based on a finding that the defendant "constructively possessed a weapon or weapons with knowledge and intent while constructively possessing cocaine." Id. at 80, 414 S.E.2d at 862. We ruled that the evidence in the record supported a finding that the defendant "simultaneously had constructively possessed cocaine and at least one firearm" because it showed he "knew of the presence and character of one or both of the guns and of the cocaine found in the closet and that he consciously possessed them." Id. at 81, 414 S.E.2d at 862. We held the Commonwealth was not required to prove that the defendant "had ready access to either the gun or the cocaine to establish 'simultaneous possession.'" Id. We noted the defendant's argument that "this interpretation would allow conviction for the possession of a small amount of cocaine in the home while keeping a handgun or hunting rifle in a safe or attic" but ruled that "[w]e [did not need to] decide that issue in this case because Jefferson was discovered leaving the room in which firearms and cocaine were found." Id.

In 1992, the General Assembly amended the statute to "add[] an additional, separate offense, embodied in then-subsection B of the statute." Taylor v. Commonwealth, 44 Va. App. 179, 182, 604 S.E.2d 103, 104 (2004). That amendment proscribed "possessing, using, or attempting to use 'any . . . firearm or displaying such weapon in a threatening manner while committing or attempting to commit the illegal manufacture, sale, distribution, or the possession with intent to manufacture, sell, or distribute a [Schedule I or II] controlled substance.'" Id. (quoting 1992 Va. Acts, ch. 707). In 1993 and 1999, the General Assembly amended the statute again to alter the sentencing provisions for those offenses, but it did not alter the elements of either offense. See id. at 182-83, 604 S.E.2d at 105. In 2003, the General Assembly "once again modified the statute, moving the former subsection B to subsection C, and adding a third, intermediate offense, embodied in subsection B of the current statute," which renders it

"unlawful for any person unlawfully in possession of" certain drugs "to simultaneously with knowledge and intent possess any firearm on or about his person." Id. at 183, 604 S.E.2d at 105 (citing 2003 Va. Acts, ch. 949).

The version of the statute applicable to appellant's crime provides as follows:

> A. It shall be unlawful for any person unlawfully in possession of a controlled substance classified in Schedule I or II of the Drug Control Act to simultaneously with knowledge and intent possess any firearm. A violation of this subsection is a Class 6 felony . . . .
>
> B. It shall be unlawful for any person unlawfully in possession of a controlled substance classified in Schedule I or II of the Drug Control Act to simultaneously with knowledge and intent possess any firearm on or about his person. A violation of this subsection is a Class 6 felony . . . and any person convicted hereunder shall be sentenced to a mandatory minimum term of imprisonment of two years. . . .
>
> C. It shall be unlawful for any person to possess, use, or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit the illegal manufacture, sale, distribution, or the possession with the intent to manufacture, sell, or distribute a controlled substance classified in Schedule I or Schedule II of the Drug Control Act or more than one pound of marijuana. A violation of this subsection is a Class 6 felony, . . . and any person convicted hereunder shall be sentenced to a mandatory minimum term of imprisonment of five years. . . .

2004 Va. Acts, chs. 461, 995 (citations omitted).

Appellant contends that the differences in the language the legislature used in subsection (C) distinguish it from subsections (A) and (B) and, thus, that a conviction under subsection (C) requires proof of simultaneous *actual*, not merely constructive, possession of both drugs and a firearm. Under settled principles of statutory construction, we disagree.

These principles require us to construe statutes to "ascertain and give effect to the legislative intent." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992). A fundamental rule of statutory construction provides "that a statute must be construed

- 10 -

from its four corners and not by singling out particular words or phrases." Smith v. Commonwealth, 8 Va. App. 109, 113, 379 S.E.2d 374, 376 (1989). When a particular word in a statute is not defined therein, a court must give it its ordinary meaning. McKeon v. Commonwealth, 211 Va. 24, 27, 175 S.E.2d 282, 284 (1970). "The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction." Smith, 8 Va. App. at 113, 379 S.E.2d at 376. "Although penal laws are to be construed strictly [against the Commonwealth], they 'ought not to be construed so strictly as to defeat the obvious intent of the legislature.'" Willis v. Commonwealth, 10 Va. App. 430, 441, 393 S.E.2d 405, 411 (1990) (citation omitted). Finally, "'[w]hen the legislature . . . pass[es] a new law or . . . amend[s] an old one, it is presumed to act with full knowledge of the law as it stands bearing upon the subject with which it proposes to deal.'" Powers v. County School Board, 148 Va. 661, 668-69, 139 S.E. 262, 264 (1927) (quoting School Bd. v. Patterson, 111 Va. 482, 487-88, 69 S.E. 337, 339 (1910)); see Bell, 21 Va. App. at 699, 467 S.E.2d at 292 (applying this principle to the legislature's use of the word "possession" in the carjacking statute at a time when principles regarding actual and constructive possession were already clearly established in the context of controlled substances law).

The statute at issue here, Code § 18.2-308.4, quoted above, proscribes three separate offenses, each of which is defined therein as a Class 6 felony. The offenses in subsections (A) and (B) are defined with almost identical language as the unlawful possession of certain enumerated controlled substances while "simultaneously with knowledge and intent possess[ing] any firearm." Subsection (A) proscribes *any* such possession of a firearm, while subsection (B) proscribes such possession if the firearm is "on or about [the defendant's] person," and subsection (B) provides a heightened penalty under those circumstances—"a mandatory minimum term of imprisonment of two years."

Subsection (C) is structured differently from subsections (A) and (B) and provides a greater mandatory minimum term of imprisonment of five years. Rather than mentioning drug possession first, subsection (C) first describes what types of activities involving a firearm are proscribed and then defines the drug-related element of the offense. Both the firearm portion of the subsection (C) offense and the drug portion of that offense require "possession" of the firearm or drug, and the element involving drug possession requires, in addition, that such possession be "with the intent to manufacture, sell, or distribute." Unlike subsection (B), however, neither portion of subsection (C) requires that either the firearm or the drug be possessed "on or about [the offender's] person." Thus, our examination of the statute as a whole makes clear the legislature understood how to require something more than constructive possession when it enacted subsection (B), proscribing possession "on or about [the] person," but that it opted not to use such language in subsection (C), either when it originally created the present subsection (C) offense in 1992 or when it amended the statute on four subsequent occasions, in 1993, 1999, 2003, and 2004. See Taylor, 44 Va. App. at 182-84, 604 S.E.2d at 105.

Appellant contends the additional language in subsection (C) indicates the legislature did, in fact, act with such an intent. Appellant argues the language, "while committing," which joins the firearm portion of the offense with the drug portion of the offense, indicates an intent to require simultaneous actual possession. We discern no such intent from the plain language of the statute. The General Assembly's use of the word "committing" connotes a degree of action related to "the possession with the intent to manufacture, sell, or distribute," but it does not require that the possession must be actual rather than constructive. The General Assembly's provision of a heightened penalty for the violation of subsection (C) is readily explained by the fact that a conviction under that subsection involves possession of drugs with the intent to

"manufacture, sell, or distribute" them, whereas neither subsection (A) nor subsection (B) requires such an intent. Thus, the existence of a heightened punishment under subsection (C) does not compel the conclusion that possession of the drugs or the firearm must be actual rather than constructive, and we hold that general constructive possession principles apply.

The recent decision in Bolden v. Commonwealth, 275 Va. 144, 654 S.E.2d 584 (2008), aff'g 49 Va. App. 285, 640 S.E.2d 526 (2007), supports the conclusion that proof of constructive possession is sufficient to support a conviction under Code § 18.2-308.4(C). In Bolden, the Supreme Court reiterated that "[a] conviction for unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary." Id. at 148, 654 S.E.2d at 586. It is true, as appellant argues, that neither the Supreme Court's opinion nor our opinion in Bolden indicates under which subsection of Code § 18.2-308.4 the case was decided. See 49 Va. App. at 289, 640 S.E.2d at 528-29. However, our records, of which we may take judicial notice, see Harris v. Commonwealth, 262 Va. 407, 413, 551 S.E.2d 606, 609 (2001), indicate that Bolden was indicted and convicted for violating subsection (C). Thus, the Supreme Court has implicitly concluded that, under proper circumstances, proof of constructive rather than actual possession of a firearm is sufficient to support a conviction under subsection (C). See Bolden, 275 Va. at 146-47, 654 S.E.2d at 585 (involving actual possession of drugs and constructive possession of a firearm concealed in a plastic grocery bag on the front seat of the car "right beside" where Bolden had been sitting in the driver's seat); see also State v. Peete, 517 N.W.2d 149, 153 (Wis. 1994) (in applying a statute providing for sentence enhancement for the commission of a crime while possessing, using or threatening to use a dangerous weapon, where the underlying crime was possession of cocaine with intent to distribute, holding "the term 'possession' has a consistent, established meaning

- 13 -

throughout the Wisconsin statutes" and "conclud[ing] that the legislature intended to give the term 'possessing' in [the enhancement statute] the same meaning").

We also reject appellant's argument that the Commonwealth was required to prove he "possess[ed]" the firearm "in a threatening manner" in order to support a conviction under subsection (C). The portion of the statute at issue makes it illegal to "possess, use, or attempt to use any pistol, shotgun, rifle, or other firearm *or* display such weapon in a threatening manner." Code § 18.2-308.4(C) (emphasis added). A plain reading of the statute indicates that the phrase "in a threatening manner" modifies only the verb "display" immediately preceding it. Cf. Smoot v. Commonwealth, 37 Va. App. 495, 501, 559 S.E.2d 409, 412 (2002) ("The word 'or' connects two parts of a sentence, 'but disconnects their meaning.'" (quoting Ruben v. Sec'y of HHS, 22 Cl. Ct. 264, 266 (1991))).

We conclude, however, as the Commonwealth conceded at trial, that the statute requires proof of a nexus between the firearm and the drugs that the defendant actually or constructively possesses. The purpose of Code § 18.2-308.4 is to provide heightened penalties for possessing or using a firearm *in conjunction with* the specified drug crime—simple possession under subsections (A) and (B), and possession with intent to distribute under subsection (C). Thus, we hold that subsection (C) requires proof of a nexus between the drug offense and the firearm possession—proof that possession of the firearm somehow furthers, advances, or helps the defendant to commit the offense of possessing a controlled substance with an intent to distribute it. See State v. Blanchard, 776 So. 2d 1165, 1169-73 (La. 2001); Commonwealth v. Hines, 866 N.E.2d 406, 411 (Mass. 2007); Peete, 517 N.W.2d at 153; cf. 18 U.S.C. § 924(c)(1) (providing expressly that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, *in furtherance of any such crime*, possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime, [be sentenced to an

additional term of years]" (emphasis added)); People v. Bland, 898 P.2d 391, 397 (Cal. 1995) ("From evidence that the assault weapon was kept in defendant's bedroom near the drugs, the jury could reasonably infer that, at some point during the [ongoing] felonious drug possession, defendant was *physically present* with both the drugs and the weapon, giving him *ready access* to the assault rifle to aid his commission of the drug offense." (emphasis added)).

Where the accused has actual possession of a firearm and displays it in a threatening manner while consummating a drug sale, proof of the nexus is obvious. Cf. Commonwealth v. Montaque, 23 S.W.3d 629, 632-33 (Ky. 2000) ("[W]henever it is established that a defendant was in actual possession of a firearm when arrested, or that a defendant had constructive possession of a firearm within his or her 'immediate control when arrested,' then, like under the federal sentencing guidelines, the Commonwealth should not have to prove any connection between the offense and the possession for the sentence enhancement to be applicable." (footnote omitted)). In contrast, where the offense is the possession of drugs with intent to distribute, additional evidence is required to establish the requisite nexus between possession of the drugs and possession of the firearm. See Peete, 517 N.W.2d at 154 (holding that imposing a nexus requirement "makes the language 'while possessing' in [Wisconsin's statute] parallel in meaning to 'while . . . using' or 'while . . . threatening to use'").

Some recognized examples of ways in which possessing a firearm might "further, advance, or help" the crime of possessing drugs with an intent to distribute them are as follows: "First, an accessible gun provides defense against anyone who may attempt to rob the trafficker of his drugs or drug profits. Second, possessing a gun, and letting everyone know that you are armed, lessens the chances that a robbery will even be attempted." United States v. Ceballos-Torres, 218 F.3d 409, 412 (5th Cir. 2000).

Like any element of an offense, evidence of a nexus between the drug possession and firearm possession may be circumstantial as long as the evidence as a whole excludes all reasonable hypotheses of innocence, see, e.g., Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983), and "the reasonable inferences to be drawn from the proven facts are within the province of the trier of fact," Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991). Factors relevant for consideration may include:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of its possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

Ceballos-Torres, 218 F.3d at 414-15.

These factors help distinguish cases in which a nexus exists between the firearm and the drugs possessed with an intent to distribute and those in which an insufficient nexus exists. For example,

> a drug dealer whose only firearms are unloaded antiques mounted on the wall does not possess those firearms "in furtherance" of drug trafficking. Nor will a drug trafficker who engages in target shooting or in hunting game likely violate the law by keeping a pistol for that purpose that is otherwise locked and inaccessible.

Id. at 415. Absent a nexus requirement, such a statute "could . . . lead to absurd consequences"– "a person could be found guilty of violating [such a] statute when he is found with drugs at his home and a gun at his fishing camp 100 miles away." Blanchard, 776 So. 2d at 1171; see Peete, 517 N.W.2d at 153 ("[I]t would be absurd to apply the penalty enhancement statute to situations in which there is no relationship between the offense and possession of a dangerous weapon, regardless of whether that possession is actual or constructive[,]" such as when a person "fills out and files a fraudulent tax return while carrying a pistol."). "Requiring proof of a nexus between

the commission of the offense and the possession of the firearm reduces or eliminates this risk without lessening the statute's legitimate penal purpose." Montaque, 23 S.W.3d at 632.

The United States Court of Appeals for the First Circuit applied these principles in Ceballos-Torres, 218 F.3d at 414-15, decided under a similar federal statute, 18 U.S.C. § 924(c)(1)(A), which criminalizes the possession of a firearm where that possession is "in furtherance of" a drug trafficking crime. In Ceballos-Torres, police found a loaded handgun lying in plain view on the defendant's bed, and in a subsequent search of the premises following his arrest, they found 569.8 grams of cocaine in a hidden compartment in a closet, $1,360 in cash in the pocket of a coat in the bedroom closet, and scales and paraphernalia for sniffing cocaine in the kitchen. 218 F.3d at 411. On appeal, the First Circuit held the evidence supported the "conclusion that Ceballos's possession of the [firearm] was 'in furtherance' of his drug trafficking offense." Id. at 415. It noted

> [t]he weapon was loaded and easily accessible in Ceballos's apartment, and he confessed to ownership of the firearm. It was possessed illegally. And it was possessed in the apartment along with a substantial amount of drugs and money. Together, these factors reasonably support a finding that Ceballos's gun protected his drugs and money against robbery. Possession of the [firearm] was, therefore, in furtherance of drug trafficking.

Id.

The First Circuit Court of Appeals also applied these principles in United States v. Luciano, 329 F.3d 1 (1st Cir. 2003). Police arrested Luciano outside an apartment building after he met a confidential informant on the street to complete a controlled purchase of 6.5 grams of heroin in 800 "individual dose" glassine packets. Id. at 2-3, 6. After Luciano was arrested, he told the officers in response to questioning that he had an apartment in the building, and he gave the officers permission to search it. Id. at 3. During that search, the officers examined an attic crawl-space and found inside it a bag containing 371.6 grams of heroin and distribution

- 17 -

paraphernalia. Id. at 3-4. A little further away from the opening to the crawl-space, the officers found a second bag that contained two handguns and their loaded but detached magazines. Id. at 4. Luciano admitted the heroin, paraphernalia, and firearms were all his. Id.

Luciano argued the guns in the crawl space "'played no role whatsoever in the drug transaction'" that occurred between him and the confidential informant on the street in front of the apartment building and, thus, that "'no "nexus" existed between the firearms and the drug selling operation.'" Id. at 5-6. The Court of Appeals held "Luciano's argument suffers from a fatal misapprehension of the underlying 'drug trafficking crime,'" which it noted was his conviction for possession with intent to distribute more than 100 grams of heroin. Id. at 6. Given that the transaction that occurred on the street involved "a mere 6.5 grams of heroin," the court held the finder of fact "inescapably found that Luciano possessed the drugs found in the crawl-space, . . . the same crawl-space where the firearms and loaded magazines were discovered." Id. The court held further that "[g]iven the proximity of the firearms and loaded magazines to the significant stockpile of heroin, we have no difficulty concluding there was a sufficient nexus between the drug trafficking crime and the firearms to sustain a conviction under [the federal statute]." Id.

The holdings in Ceballos-Torres and Luciano, which were rendered under a nexus standard similar to or greater than that required by Code § 18.2-308.4(C), support a finding that the required nexus between the firearm and drugs was established in appellant's case. Here, although the police arrested appellant at a location on the street rather than in his home and found drugs on him at that time like in Luciano, they also found both drugs and a loaded handgun in close proximity to one another in his residence. Using a key appellant provided, police entered the residence with appellant and found his loaded firearm in a holster attached to the head of his bed, just where appellant said it would be, within easy reach of where he slept.

The evidence also supported a finding that police found a substantial quantity of cocaine—over 100 grams—in close proximity in the pocket of a jacket in the bedroom's closet. Appellant admitted the loaded firearm and the drugs were his. Detective Smith had encountered appellant in his vehicle two days earlier, at which time he had the loaded firearm with him in his car. Detective R.M. Holley, who testified as an expert in the use, packaging, and distribution of drugs in the City of Portsmouth, explained that "the gun . . . is one of those things that you normally find with people that are doing something other than *using* drugs." (Emphasis added.) Thus, although appellant had purchased the gun legally, the evidence "reasonably supported a finding that [appellant's] gun protected his drugs," Ceballos-Torres, 218 F.3d at 415, thereby providing the necessary nexus between appellant's constructive possession of the handgun and drugs, which were in close proximity to one another in his bedroom. See also Johnson v. State, 839 A.2d 769, 782 (Md. Ct. Spec. App. 2003) (in applying a Maryland statute that criminalizes the possession of a firearm "during and in relation to any drug trafficking crime" and contains an express "nexus" requirement, interpreting Ceballos-Torres, Luciano, and similar federal cases as holding "[I]t is now well settled that the trier of fact is entitled to find that when (1) drugs are discovered under circumstances that indicate the person possessing those drugs intended to distribute them, and (2) a gun is discovered in close proximity to those drugs, the gun was possessed 'in relation to' a drug trafficking crime.").

Thus, we conclude the evidence supported the trial court's finding that appellant "possess[ed] . . . any . . . firearm . . . while committing . . . the possession with the intent to . . . sell[] or distribute a controlled substance classified in . . . Schedule II of the Drug Control Act." See Code § 18.2-308.4(C).

III.

For these reasons, we hold the trial court did not err in concluding that evidence of appellant's constructive possession of the drugs and the firearm was sufficient to support his conviction for violating Code § 18.2-308.4(C) and that proof of actual possession was not required.  Thus, we affirm the challenged conviction.

<u>Affirmed.</u>