# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Friedman, Malveaux and Fulton
Argued by videoconference

VAN SHAWN RODGERS

v.      Record No. 0256-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JUNIUS P. FULTON, III
SEPTEMBER 27, 2022

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Kevin M. Duffan, Judge

Thomas H. Sheppard, II (Sheppard & O'Brien, P.C., on brief), for
appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

After a bench trial, the trial court convicted Van Shawn Rodgers of possession with the

intent to distribute a controlled substance, simultaneous possession of a firearm and a controlled

substance, possession of a firearm by a violent felon, and publicly carrying a loaded semi-automatic

firearm in the City of Virginia Beach. By final order entered on November 24, 2021, the trial court

sentenced him to a total of twenty-five years and twelve months' incarceration with eighteen years

and eighteen months suspended. Rodgers challenges the sufficiency of the evidence, contending

that the Commonwealth failed to prove beyond a reasonable doubt that he possessed either a

controlled substance or a firearm. For the following reasons, we affirm his convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

On the morning of January 7, 2020, Virginia Beach Police Officer Mayberry responded to a call that a man was sleeping in a running vehicle, partially blocking a driveway.  According to the report, the vehicle had been "running for several hours."  When Officer Mayberry arrived at the scene, she saw the sole occupant of the vehicle, Rodgers, asleep in the driver's seat.  It took Officer Mayberry several minutes to wake Rodgers, and when he awoke, he appeared disoriented and potentially intoxicated.  Rodgers told Officer Mayberry that he had left a party in Sandbridge to go to the store but could not provide any other details regarding his situation.

When Officer Mayberry had Rodgers's name and the vehicle's license plates "r[u]n through dispatch," she discovered an active warrant for Rodgers's arrest and that the vehicle was listed as stolen.  While searching Rodgers incident to his arrest, Mayberry found a small amount of marijuana in his pocket, a black plastic bag tucked in his waistband, and approximately $100 in cash.  When Officer Mayberry searched the vehicle, she found three black plastic bags in the open center console.  The black plastic bags in the console were "similar to" the bag in Rodgers's waistband.  The black plastic bags in the console contained several clear plastic baggies of a white powdery substance, a small scale, and several empty baggies.

Mayberry also found a loaded black Springfield handgun with an extended magazine "partially hidden under" the driver's seat.  She was able to see the barrel of the firearm standing at the driver's door without having to bend over.  Officer Sanchez, who was also present during the search of the vehicle, observed a green leafy substance on the driver's floorboard.  Rodgers made no statements regarding the firearm or the substances in the center console, and Mayberry did not see him make any movements in the direction of the floorboard or the console.

Forensic analysis determined that three of the clear plastic baggies seized from the vehicle contained 2.56 grams, 4.54 grams, and .5817 gram of heroin, respectively.  One of the clear baggies

also contained methamphetamine. Without objection, the trial court qualified Detective Otranto as an expert in the areas of personal use and distribution of narcotics. Detective Otranto, who took custody of the evidence at the scene, opined that the evidence was consistent with distribution and inconsistent with personal use, stating that the street value of the heroin was over $700.

After the Commonwealth rested its case, the trial court denied Rodgers's motion to strike and convicted him on all counts. Although there was no evidence regarding ownership of the vehicle, the trial court found that Rodgers was its sole occupant for several hours before the officers discovered the firearm and the narcotics. The court also found that the presence of a green leafy substance in Rodgers's pocket and on the driver's side floorboard increased the likelihood that Rodgers knew that the firearm was partially hidden under the driver's seat.

The trial court noted that the narcotics were inside an opaque plastic bag, and thus not plainly visible. The trial court found, however, that the plastic bag in Rodgers's waistband appeared similar to the bags containing the narcotics. Moreover, the court found it unlikely that someone would leave $700 worth of heroin unattended in a vehicle. Thus, the trial court found that the Commonwealth met its burden of proving that Rodgers possessed the firearm and the narcotics. Rodgers appeals.

## II. ANALYSIS

Rodgers contends that the trial evidence was insufficient to sustain his convictions because the Commonwealth failed to prove that he possessed either the drugs or the firearm found in the vehicle. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask

itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). "Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v. Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)).

In order to convict a defendant of possessing illegal drugs or unlawful possession of a firearm, "the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug [or firearm] and that the accused consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020) (citing *Jones v. Commonwealth*, 17 Va. App. 527, 532 (1994)) (possession of illegal drugs); *see Myers v. Commonwealth*, 43 Va. App. 113, 122 (2004) (unlawful possession of firearm). "Possession and not ownership is the vital issue." *Smallwood*, 278 Va. at 631 (quoting *Burnette v. Commonwealth*, 194 Va. 785, 792 (1953)). In proving possession, as with any other element, "circumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."

*Finney v. Commonwealth*, 277 Va. 83, 89 (2009) (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)).

"[P]roof of actual possession is not required; proof of constructive possession will suffice." *Yerling*, 71 Va. App. at 532 (alteration in original) (quoting *Walton v. Commonwealth*, 255 Va. 422, 426 (1998)); *see Wells v. Commonwealth*, 32 Va. App. 775, 781 (2000). The Commonwealth proves that a defendant constructively possessed contraband by establishing "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the [contraband] and that it was subject to his dominion and control." *Yerling*, 71 Va. App. at 532 (first alteration in original) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). "Mere proximity to a controlled drug is not sufficient to establish dominion and control." *Id.* (quoting *Drew*, 230 Va. at 473); *see Myers*, 43 Va. App. at 123 (holding that occupancy of a vehicle and "close proximity" to a hidden firearm are "legally insufficient" to prove possession); *Hancock v. Commonwealth*, 21 Va. App. 466, 472 (1995). But occupancy and proximity "are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018) (quoting *Wright v. Commonwealth*, 53 Va. App. 266, 274 (2009)).

A. Possession of the Firearm

Rodgers contends that the Commonwealth failed to prove that he possessed the firearm because it was "partially concealed," and because he made no furtive movements in the direction of the firearm. The trial court credited Officer Mayberry's testimony that she saw the barrel of the firearm protruding from under the driver's seat while standing at the driver's side. *Cf. Myers*, 43 Va. App. at 117 (officer found handgun "wrapped in a blanket on the front floorboard"). Thus, although the firearm was partially hidden, it was also clearly visible to the extent that

Officer Mayberry could see it "without having to bend down or having to manipulate anything . . . just from standing at the driver's side." Moreover, in addition to the gun, police found marijuana, heroin, and methamphetamine while searching Rodgers and the car in which he had been the sole occupant "for hours."[1] There is a well-established relationship between guns and drugs. *See, e.g.*, *Thomas v. Commonwealth*, 44 Va. App. 741, 755 (noting that "[g]uns are the 'tools of the trade' in the underground drug world" and that there is a "commonly accepted correlation" between guns and drugs), *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). Although the mere proximity to both guns and drugs is not alone dispositive of whether a person has constructive possession of a firearm, "evidence linking a defendant to drug distribution may be considered as one factor in determining whether he may have had a motive to possess a firearm." *Id.* Viewing this circumstantial evidence in the light most favorable to the Commonwealth, a rational trier of fact could conclude that, regardless of how the firearm came to be in the vehicle, given its location on the floorboard and the length of time that Rodgers was the sole occupant of the vehicle, Rodgers was not only undoubtedly aware of its presence and character but also exercised dominion and control over the firearm. *Drew*, 230 Va. at 473 ("To support a conviction based upon constructive possession, 'the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" (quoting *Powers v. Commonwealth*, 227 Va. 474, 476 (1984))). A factfinder likewise could infer that a firearm is a "commodity of

---

[1] On appeal, Rodgers asserts that "the record is without evidence establishing how long the vehicle was in its location or whether [he] was its only occupant for that period of time." Officer Mayberry testified, without objection, however, that the vehicle had been in the same location with the engine running for several hours before she arrived and that the sleeping Rodgers was the sole occupant when she arrived. This testimony supports the trial court's finding that Rodgers was the sole occupant for several hours before his arrest.

significant value," and thus "unlikely to be abandoned or carelessly left in an area." *Ward v. Commonwealth*, 47 Va. App. 733, 753 n.4 (2006). Accordingly, the circumstantial evidence was sufficient to exclude every reasonable hypothesis except that Rodgers constructively possessed the firearm in the vehicle. *Finney*, 277 Va. at 89.

### B. Possession of Controlled Substance

Regarding possession of the narcotics in the vehicle's center console, Rodgers analogizes his case to *Yerling* and *Coward v. Commonwealth*, 48 Va. App. 653 (2006). In both of those cases, this Court reversed the defendants' convictions for possession of a controlled substance because we concluded that the Commonwealth had proved only occupancy of a vehicle containing narcotics and proximity to the narcotics. *Yerling*, 71 Va. App. at 530, 535-36; *Coward*, 48 Va. App. at 656, 659-60. The police pulled over Yerling—who was the sole occupant of the vehicle—for speeding and discovered a small amount of marijuana and a pink pill concealed in a piece of paper in the center console. *Yerling*, 71 Va. App. at 530-31. We noted that the pill—later found to be oxycodone—was "out of sight, in a closed console, wrapped in a crumpled piece of paper, in a car that may or may not have belong to Yerling" and that he made "no statements, incriminating or otherwise, that would lead the factfinder to infer that he was aware of the presence of the pill." *Id.* at 533.

Coward was the front passenger in a vehicle pulled over at night for an unilluminated license plate. *Coward*, 48 Va. App. at 656. During the stop, the officer saw a "hard white substance," later determined to be slightly less than a gram of crack cocaine, "sitting on the console in between the driver's and passenger's seats." *Id.* We noted that Coward did not take any actions that suggested guilty knowledge, there was no evidence regarding how long Coward had been in the car, and "there was no evidence that the baggie would have been visible in the

darkness of the passenger compartment" absent the "additional lighting" the officer used to find the baggie. *Id.* at 660.

This case is not analogous to *Yerling* and *Coward*. The trial court found that Rodgers had been in the vehicle for several hours, increasing the likelihood that he knew of the presence and character of the drugs and exercised dominion and control over them. Both *Yerling* and *Coward* involved relatively small amounts of drugs. The officers in *Yerling* found a small amount of marijuana and one oxycodone pill, 71 Va. App. at 530-31, and the evidence in *Coward* pointed to personal use of crack cocaine, 48 Va. App. at 658-59. Here, Rodgers was found next to a bag containing over $700 worth of heroin and a scale. Detective Otranto testified that this evidence was consistent with narcotics trafficking, not personal use. The trial court concluded that it was unlikely that someone would leave this quantity of heroin unattended in a vehicle. Thus, it was more likely that Rodgers, however he came to be in the vehicle, brought the narcotics with him.

Finally, the trial court credited Officer Mayberry's testimony that the black plastic bag containing the drugs was similar to the one found in Rodgers's waistband. This similarity between the bag on Rodgers's person and the bag containing the drugs increases the likelihood that the bags shared a common source. Thus, Rodgers's possession of one bag implies his knowledge of the drugs in the similar bag in the center console. Taken together in the light most favorable to the Commonwealth, Rodgers's sole occupancy in the vehicle for several hours, his proximity to the drugs, the quantity of drugs, the presence of drug trafficking paraphernalia, and the similarity of the plastic bag in Rodgers's waistband to the bag containing the drugs support the trial court's finding that Rodgers possessed the drugs.

CONCLUSION

The Commonwealth's evidence was sufficient to prove that Rodgers constructively possessed the firearm and the narcotics in the vehicle. Therefore, we affirm his convictions.

*Affirmed.*